UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERIC TRACY DORIA,

                                 Plaintiff,

      v.                                             **DECISION AND ORDER**
                                                                     13-CV-598S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

1.     Eric Doria challenges the decision of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").

2.     Alleging disability due principally to agoraphobia and social anxiety beginning on February 28, 2010, Doria applied for Social Security benefits on June 15, 2010. The Commissioner of Social Security ("Commissioner") denied that application, and as result, Doria requested an administrative hearing. He received that hearing before ALJ David Lewandowski. The ALJ considered the case *de novo*, and on February 9, 2012, issued a decision denying Doria's application. Doria filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action, challenging Defendant's final decision.[1]

3.     On January 21, 2014, Doria and the Commissioner both filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Doria responded to the Commissioner's motion, but the Commissioner did not respond to Doria's motion. For the following reasons, Doria's motion is granted.

---

[1] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.  The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8.      In this case, the ALJ made the following findings: (1) Doria has not engaged in substantial gainful activity since his onset date (R. 15)[2]; (2) Doria suffers

---

[2] Citations to the underlying administrative record are designated "R."

from panic disorder with agoraphobia, a severe impairment (id.); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 16); (4) he retains the residual functional capacity ("RFC") to perform the full range of work with several non-exertional limitations, including limitations with interacting with the public and working in proximity to co-workers. (R. 17); and (5) there are jobs that exist in significant numbers in the national economy that he can perform. (R. 20.) Ultimately, the ALJ concluded that Doria was not under a disability, as defined by the Act, from his onset date through the date of the decision. (R. 21.)

9. Doria argues that the ALJ violated the "treating-physician rule," which is "a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03–Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).[3]

10. Under the treating physician's rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2) 5; see also Green–Younger v. Barnhart, 335 F.3d 99 (2d Cir.2003). Here, Doria saw Wendy Weinstein, M.D., his treating psychiatrist, numerous times throughout the period beginning in early 2010 and ending in the middle of 2011. Based on these visits, Dr. Weinstein prepared a document for the Social Security Administration. In the document, which asks the preparer to check appropriate boxes for various work-related functions,

---

[3] Effective March 26, 2012, the Commissioner amended §§ 404.1527 and 416.927. 77 FR 10651, 10656. This opinion refers to regulations in effect when this claim was adjudicated.

4

Dr. Weinstein indicated that Doria had no significant limitations in many areas, including remembering locations, understanding, remembering and carrying out short, simple instructions, and maintaining attention and concentration for extended periods. (R. 257–58.) But she also found that, in addition to being markedly impaired in several crucial areas, Doria was *extremely impaired* in his *ability to complete a normal workday and work-week* without interruptions from psychologically based symptoms. (R. 258.)

11. But the ALJ dismissed this opinion on the ground that Dr. Weinstein's treatment notes, which the ALJ characterized as "not very thorough," do not "seem to indicate that claimant is disabled." (R. 18.) The ALJ also summarily found that Dr. Weinstein's opinion is "inconsistent with medical evidence, including her own medical reports." (R. 19.) He also noted that "Dr. Weinstein's treatment is based primarily on the claimant's subjective complaints." (R. 18.)

12. While the ALJ is free is assign little or even no weight to a treating source under certain conditions, the ALJ's failure to elaborate these findings is troubling. The ALJ does not explain what "medical evidence" the ALJ's opinion is inconsistent with. Nor does he explain what aspects of the Dr. Weinstein's reports are inconsistent with her findings. These are critical omissions that frustrate both meaningful review and the claimaint's ability to understand the decision rendered against him.

13. As for the first matter – that Dr. Weinstein's opinion is inconsistent with medical evidence – the ALJ might be referring to the results of an examination completed by a consultive examiner, Renee Baskin, Ph. D.

But, as an initial matter, the ALJ did not even mention either Dr. Baskin or a non-examining psychologist, Dr. Butensky, in the substantive portion of his decision. For its part, in its brief to this Court, the Commissioner highlights some rather inconsequential

findings made during Dr. Baskin's examination. For example, Dr. Baskin found Doria to be "appropriately, neatly and casually dressed, and well groomed;" his "gait, posture and motor behavior were normal;" and his "[e]ye contact was appropriate." (R. 221.) But the Commissioner fails to note a significantly more critical finding of Dr. Baskin: that "the results of the present evaluation appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis." (R. 222.)  This examination, therefore, tends to support – rather than detract from – Dr. Weinstein's conclusion. And although Dr. Butensky's findings are less severe, he did conclude that Doria had "moderate" limitations in roughly half of the areas in which he was asked to formulate an opinion. (R. 251–52.) Thus, it remains unclear what medical evidence Dr. Weinstein's opinion is inconsistent with.

14. As for the second matter – that Dr. Weinstein's reports are inconsistent with her conclusion – Doria identifies several instances where the reports are in fact *consistent*. On March 10, 2010, for example, Dr. Weinstein found that Doria does appear "to be suffering from prominent symptoms of panic attacks[,] which are now affecting his functioning and are causing him to become agoraphobic." (R. 217.) In April, Dr. Weinstein noted that he "continues to be agoraphobic" and that he is "unable to leave the house." (R. 216.) In August, he "remained reluctant to leave his house," and in September he "continue[d] to struggle with panic and agoraphobia." (R. 232, 233.) Finally, in July of 2011, Dr. Weinstein noted that his panic attacks were precipitated by "going out." (R. 264.)

15. As for the third matter – that Dr. Weinstein's conclusion is not worthy of weight because her "treatment" was based on subjective complaints – "the accepted clinical technique" in matters such as this is for an assessment to be "based on a

6

patient's subjective reports and the psychiatrist's own observations." Garcia v. Comm'r of Soc. Sec., 496 F. Supp. 2d 235, 242 (E.D.N.Y. 2007) (quoting Huskey v. Astrue, 2007 WL 2042504, at *6 (D. Kan. July 5, 2007)). Dr. Weinstein's opinion appears to be based on these elements, and it is therefore not suitable for rejection solely on this basis.

16. Although it does appear that Doria was improving with medication, that his panic attacks became less frequent with time, and that he may have overstated the effect of his limitations in his testimony before the ALJ, the selections above demonstrate that Dr. Weinstein's opinion cannot summarily be disregarded. Indeed, the treating-physician rule demands more. The Regulations provide that the Commissioner will "always give good reasons . . . for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). The reasons provided here clearly do not meet that standard, and therefore, remand for a further consideration and discussion of Dr. Weinstein's opinion, which is not specifically contradicted by any other medical opinion, is necessary. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (failure to satisfy treating-physician rule constitutes legal error, and "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence"); Webb v. Colvin, No. 12-CV-753S, 2013 WL 5347563, at *6 (W.D.N.Y. Sept. 23, 2013) (remanding where ALJ rejected treating source's opinion with the terse explanation that it was "not supported by treatment notes or the objective medical evidence of record").

****

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner for proceedings consistent with this Decision

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: July 3, 2014
      Buffalo, New York

                                        <u>/s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                    United States District Court